IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

            Plaintiff,

    Vs.                                    No.  10-40095-01/02-SAC

ROBERT ANDREW BLECHMAN
and MICHAEL N. SOFRIS,

                Defendants.


MEMORANDUM AND ORDER

            The case comes before the court on the following pretrial

motions by the defendant Robert Andrew Blechman:  motion to dismiss

count one for insufficiency of the evidence as a matter of law, or

alternatively, motion for a bill of particulars (Dk. 32); motion to dismiss

count two (Dk. 33); motion to dismiss count two as an unconstitutional

exercise of the court's power of contempt (Dk. 34); motion to transfer

venue (Dk. 35); and motion for a *James* hearing (Dk. 36).  Also pending are

the following motions filed by the defendant Michael N. Sofris:  motion to

dismiss for failure to establish venue and motion to join co-defendant's

motion to dismiss for insufficiency of evidence or alternatively, motion for

bill of particulars (Dk. 39); motion to join Blechman's motion to transfer

venue (Dk. 40); motion for notice of co-conspirator hearsay evidence and for *James* hearing (Dk. 41); motion to dismiss count two because one cannot aid or abet contempt (Dk. 48); motion to join Blechman's motion to dismiss (Dk. 49); and motion to join Blechman's motion to dismiss count two as an unconstitutional exercise of contempt power (Dk. 50).  The government has filed a consolidated response to the above motions.  (Dk. 55).  Counsel for all parties orally argued these motions on February 22, 2011, and the court took the motions under advisement.  After further reviewing the pleadings and extending its research of the relevant law, the court files the following as its ruling.

**INDICTMENT**

The defendants are charged in count one with conspiracy in violation of 18 U.S.C. § 371, for having "combined, conspired, confederated and agreed to commit offenses against the United States of America, in the District of Kansas and elsewhere, to wit:  making false oaths in bankruptcy, in violation of Title 18 United States Code, § 152; and, criminal contempt in violation of Title 18 United States Code, § 401, with reference to § 3148(c)."  (Dk. 1, pp. 4-5).  Count one alleges the following as overt acts taken "[i]n furtherance and execution of the conspiracy and in

order to affect the objects of the conspiracy":  Blechman filing Chapter 7 bankruptcy petitions in the Central District of California in November of 2002 and in January of 2003, Sofris placing Blechman's California residence into a trust in 2003, and Blechman and Sofris filing a Chapter 11 bankruptcy petition in the Central District of California to block eviction from Blechman's California residence.  (Dk. 1, p. 5).

Count two charges the defendants with criminal contempt, 18 U.S.C. §§ 2 & 401 with reference to § 1348(c), for disobeying and resisting Judge Sebelius's order setting conditions of release "by committing the crime of knowingly and fraudulently making a material false declaration . . . under penalty of perjury in relation to a bankruptcy case, that is the Statement of Financial Affairs and Schedule F, in violation of 18 U.S.C. § 152."  (Dk. 1, p. 6).  The indictment includes at ¶ 8(A), the following allegation:  "On June 15, 2010, as required by the Bankruptcy Code and Rules, the Defendants filed Schedules and a Statement of Financial Affairs. The Defendants signed the bankruptcy petition, the schedules, and the Statement of Financial Affairs under penalty of perjury."  (Dk. 1, p. 3).

**COUNT ONE:  BLECHMAN'S MOTION TO DISMISS FOR INSUFFICIENCY OF THE EVIDENCE AS A MATTER OF LAW, OR ALTERNATIVELY, MOTION FOR A BILL OF PARTICULARS (Dk. 32) AND SOFRIS'S MOTION TO DISMISS FOR FAILURE TO ESTABLISH**

**VENUE AND MOTION TO JOIN BLECHMAN'S MOTION TO DISMISS (Dk. 39)**

The court grants Sofris's motion to join Blechman's motion and will address the motions as one. The defendants argue that the government is unable to prove as a matter of the law the allegation in count one that the defendants: "combined, conspired, confederated and agreed to commit offenses against the United States of America, *in the District of Kansas* and elsewhere . . . ." (Dk. 1, p. 5) (italics added). Noting that all of the bankruptcy filings are alleged to have occurred in California, are alleged to concern property located in California, and are alleged to have been made by the defendants who resided in California, and that all alleged overt acts directly referenced in count one occurred in California, the defendants contend the government cannot prove venue for count one exists in the District of Kansas.

Rule 12 of the Federal Rules of Criminal Procedure permit a party to "raise by pretrial motion any defense, objection or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). The Tenth Circuit has discussed this provision:

> [R]ule 12 authorizes the district court to resolve before trial only those motions "that the court can determine *without a trial of the general issue.*" Fed. R. Crim. P. 12(b)(2) (emphasis added). In a criminal

case, the "general issue" is "defined as evidence relevant to the question of guilt or innocence." *United States v. Yakou*, 428 F .3d 241, 246 (D.C. Cir. 2005) (quotation marks omitted). Thus, the Supreme Court has instructed, Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969); *see also United States v. Knox*, 396 U.S. 77, 83, 83 n. 7, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); *United States v. Mandujano*, 425 U.S. 564, 585 n. 1, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (Brennan, J., concurring). If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial.
. . . .
Accepting that Rule 12(b)(2) has long governed, and continues to govern federal criminal proceedings, what motions might be said to be susceptible to pretrial determination without imipricating what the Rule calls "trial of the general issue"? They fall into two general categories. First, some pretrial motions simply do not implicate the general issue at all. These include motions related to what evidence might be admitted at trial (*e.g.*, suppression motions), or the conduct of and preparation for trial (*e.g.*, joinder of offenses and codefendants, **venue**, bills of particulars, and discovery), for example. . . . . So long as a motion implicates "fact[s] peculiar to the motion," and not facts surrounding the question of guilt or innocence, it can't be said to implicate the general issue. [*United States v.*] *Covington*, 395 U.S. [57] at 60 [(1969)].

*United States v. Pope*, 613 F.3d 1255, 1259-60 (10th Cir. 2010) (bolding added).

Consistent with this rule, the courts have fashioned the following standards to govern a pretrial motion challenging the sufficiency of an indictment. Courts regard an indictment "'sufficient if it sets forth the

elements of the offense charged, puts the defendant on fair notice of the

charges against which he must defend, and enables the defendant to

assert a double jeopardy defense.'" *United States v. Todd*, 446 F.3d 1062,

1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197,

1205 (10th Cir. 1997)). A sufficiency challenge does not allow a court to

question the strength of the government's case or its evidence, for the

indictment "'should be tested solely on the basis of the allegations made on

its face, and such allegations are to be taken as true.'" *Id.* (quoting *United*

*States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)). For the court "[o]n a

motion to dismiss an indictment, the question is not whether the

government has presented sufficient evidence to support the charge, but

solely whether the allegations in the indictment, if true, are sufficient to

establish a violation of the charged offense." *Id.* (citing *United States v.*

*Sampson*, 371 U.S. 75, 78-79 (1962); *Hall*, 20 F.3d at 1087). To this

general rule, the Tenth Circuit has recognized a narrow exception:

> In "limited circumstances," however, this Court has held that a district
> court may "dismiss charges at the pretrial stage ... where the
> operative facts are undisputed and the government fails to object to
> the district court's consideration of those undisputed facts in making
> the determination regarding a submissible case." *Hall*, 20 F.3d at
> 1088. Pretrial dismissal based on undisputed facts is a determination
> that "as a matter of law, the government is incapable of proving its
> case beyond a reasonable doubt." *Id.* Dismissal in this manner is

6

the "rare exception," not the rule. *Id.* Dismissals under this exception are not made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted.

*United States v. Todd*, 446 F.3d at 1068. Simply put, this case fits this "rare exception" if the operative facts are not in dispute, if the government does not offer a reasonable objection to the court's inquiry into the evidence, and if the defendant seeks dismissal not because the evidence is lacking but because the undisputed evidence shows he could not have committed the offense as charged.

The Tenth Circuit recently summarized the law relevant to venue in criminal cases:

Although venue is not the focal point in most criminal matters, it is "not a mere technicality." [*United States v.*] *Miller*, 111 F.3d [747] at 749 [(10th Cir. 1997)]; *see also United States v. Winship*, 724 F.2d 1116, 1123 (5th Cir.1984) ("Appellants raise more than a pedantic, justice-defeating technicality in asserting venue related rights." (internal quotation marks and footnote omitted)). It is a constitutional consideration and an element of every crime. *Miller*, 111 F.3d at 749. Specifically, the U.S. Constitution, in Article III, Section 2, Clause 3, "requires that the trial of any crime be held in the state in which the crime was committed," and the Sixth Amendment "guarantees trial by a jury of the state and district in which the crime was committed." *Id.* (internal quotation marks omitted) (quoting *United States v. Medina-Ramos*, 834 F.2d 874, 875-76 (10th Cir.1987)). The Federal Rules of Criminal Procedure also address venue, providing for prosecution in the district where the offense occurred, unless a statute or other permissive procedure allows for another venue. *See*

Fed. R. Crim. P. 18.

      Even so, we have consistently approached venue differently than other "substantive" elements making up a criminal offense. *Miller*, 111 F.3d at 749. The critical distinction is the government need only establish venue by a preponderance of the evidence and not beyond a reasonable doubt. *See United States v. Byrne*, 171 F.3d 1231, 1234 (10th Cir. 1999). Thus, in our review, we are mindful that venue is an element of every crime, while recognizing the separate evidentiary standards.

*United States v. Kelly*, 535 F.3d 1229, 1233 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1392 (2009). It is well established "that a person [is to] be tried for an offense where that offense is committed," and that "the site of a charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 5 (1998) (quotation marks and citations omitted). "'Venue is proper in conspiracy offenses [18 U.S.C. § 371] in any district where the agreement was formed or an overt act occurred.'" *United States v. Scott*, 37 F.3d 1564, 1580 (10th Cir. 1994) (quoting *United States v. Maceo*, 947 F.2d 1191, 1200-01 (5th Cir.1991), *cert. denied*, 503 U.S. 949, (1992)), *cert. denied*, 513 U.S. 1995). So, venue in Kansas is proper for count one of the indictment if one of the overt acts occurred in Kansas or if the agreement was formed here. On its face, the indictment fails to allege facts to support venue in Kansas.

Rather than just working within the established rules for venue on § 371 conspiracy counts, the government also advocates for a different rule for venue. "[V]enue is also proper in Kansas because of the nature of the crime of contempt. The proper venue for vindication of Judge Sebelius's Order is in Kansas, where the Order was entered." (Dk. 55, p. 6). The government offers no authority for the proposition that the venue rules for § 371 conspiracy charges change when the object of the agreement is the commission of contempt.

"It is well settled 'that a substantive crime and a conspiracy to commit that crime are not the same offence.'" *United States v. Mullins*, 613 F.3d 1273, 1287 (10th Cir.) (quoting *United States v. Felix*, 503 U.S. 378, 289 (1992)) (footnote omitted), *cert. denied*, 131 S. Ct. 582 (2010). "The essence of any conspiracy is the agreement or confederation to commit a crime." *United States v. Bedford*, 536 F.3d 1148, 1155 (10th Cir. 2008) (internal quotation marks and citation omitted), *cert. denied*, 129 S. Ct. 1359 (2009). "[W]hen 'a defendant is charged in more than one count, venue must be proper with respect to each count.'" *United States v. Tingle*, 183 F.3d 719, 726 (7th Cir.) (quoting *United States v. Granados*, 117 F.3d 1089, 1091 (8th Cir. 1997)), *cert. denied*, 528 U.S. 1048 (1999). "Courts

must perform a separate venue analysis for the substantive crimes and the conspiracy, even if the substantive crimes are committed in furtherance of the conspiracy." *Granados*, 117 F.3d at 1091 (citing *United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1997); *see also United States v. Mikell,* 163 F. Supp. 2d 720, 727 (E.D. Mich. 2001). Contrary to the government's position, the law seems settled that courts do not collapse the venue determination for the conspiracy count with that done for the substantive crime count. The government offers the court no citations of authority nor persuasive reasons for following a different rule when the substantive crime is contempt.[1]

As first revealed in the memoranda and confirmed at the hearing, the defendants are understandably confused as to what offenses they are being charged with conspiring to commit.[2] Count one appears to

---

[1]On this issue, the government quotes from *Dunham v. United States*, 289 F. 376, 378 (5th Cir. 1923), on the important reasons for criminal contempt being charged and tried in the same district as the court whose order has been defied. While the opinion in *Dunham* refers to conspiracy allegations, the offense that was charged and then tried was criminal contempt. The court does not read *Dunham* to support the government's proposition for a different venue rule for a conspiracy to commit contempt.

[2]"To indict a defendant with conspiracy under § 371, the government must charge that: (1) there was an agreement to violate the law; (2) the defendant knew the essential objective of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, (4) an overt act

charge two alternative criminal objectives: making false oaths in

bankruptcy in violation of 18 U.S.C. § 152 and committing criminal

contempt in violation of 18 U.S.C. § 401. At the hearing, the government

did not respond to defense counsels' repeated concerns over this

alternative language in the indictment. For the record, the only position

taken by the government is what appears in its filed memorandum. After

denying that it is charging the substantive offense of bankruptcy fraud, the

government offers that count one of the indictment "charges that the

defendants have conspired to violate the contempt statute by committing

the crime of bankruptcy fraud in violation of a court order entered in

Kansas." (Dk. 55, p. 5). Having staked its explanation of count one on this

single statement in its filed memorandum, the government certainly should

be held accountable for it. Thus, the court hereby finds, as a matter of law,

_____

was committed in furtherance of the conspiracy, and (5) the coconspirators
were interdependent." *United States v. Bedford*, 536 F.3d 1148, 1156
(10th Cir. 2008). "Furthermore, a conviction for conspiracy requires the
defendant to possess at least the degree of criminal intent necessary for
the substantive offense that the parties are conspiring to commit." *United
States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009) (citations omitted).
*Id.* (citations omitted). It follows then that "in a conspiracy prosecution, it is
also necessary that the indictment contain the essential elements upon
which the underlying offense rests," but "the elements of the underlying
offense need not be charged with the same degree of specificity as would
ordinarily be required in a prosecution based on the underlying offense."
*Bedford*, 536 F.3d at 1156 (internal quotation marks and citation omitted).

that count one charges a conspiracy with the object of violating the contempt statute by committing the crime of bankruptcy fraud.[3]

To the venue challenge, the government first asserts that Sofris "committed overt acts in furtherance of the conspiracy in Kansas as noted in the indictment." (Dk. 55, p. 5). The government quotes the allegation from ¶ 4 in the indictment that during the jury trial in case number 08-40008-JAR, Sofris "testified on behalf of Blechman as a character witness." (Dk. 1, ¶ 4; Dk. 55, p. 5). This allegation is not included as one of the alleged overt acts in count one. While asserting that Sofris's character-witness testimony in the underlying trial is an overt act, the government offers no theory or explanation for how this testimony "furthered" the conspiracy and its object of committing contempt.

The defendants argued at the hearing that Sofris's testimony

_____

[3]"It is well established that to sustain a conviction the government needs to prove only one object of a charged conspiracy-even when the indictment charges a multi-object conspiracy in the conjunctive." *United States v. Sprenger*, 625 F.3d 1305, 1308 (10th Cir. 2010) (citations omitted), *cert. denied*, 131 S. Ct. 1030 (2011). Removing one of the objects does not constructively amend the indictment but only clarifies the government's same burden of proof on that count. *Id.* "'A single agreement to commit several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies.'" *United States v. Morehead*, 959 F.2d 1489, 1508 (10th Cir. 1992) (quoting *United States v. Broce*, 488 U.S. 563, 570-71 (1989)).

could not have furthered a conspiracy to commit contempt of an order that did not even exist.  The government did not respond to this argument during the hearing.  It cannot be overlooked that when Sofris testified in Blechman's criminal trial, Judge Robinson's order of release pending appeal was not on file and there were no grounds to justify even filing it.  The government's memorandum offers no meaningful explanation for linking Sofris's testimony in that trial to the later charged conspiracy to violate the contempt statute by committing bankruptcy fraud.  The jury returned its verdict of guilty in January of 2009, and the bankruptcy fraud allegedly occurred in June of 2010.

        The court does not track the government's argument that "SOFRIS committed the overt act of coming to Kansas to attempt to extricate his co-conspirator from legal problems in this District."  (Dk. 55, p. 6).  Count one does not charge a conspiracy to extricate the defendant from any legal problems in the District of Kansas, but rather a conspiracy to commit contempt by bankruptcy fraud.  "[T]he precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects."  *Braverman v. United States*, 317 U.S. 49, 53 (1942).  "To determine the scope of the alleged conspiratorial

agreement, the court is bound by the language of the indictment." *United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006) (internal quotation marks and citation omitted).

The government has not come forward with a plausible basis for understanding Sofris's testimony to be an overt act in furtherance of this conspiracy when it occurred before such contingencies as the jury's return of a guilty verdict against Blechman, the final order of forfeiture entered nearly a year later, Judge Robinson's order of Blechman's release pending appeal entered over a year later, (D. Ct. No. 08-40008, Dk. 195), and the circumstances leading to the bankruptcy filed by Blechman and Sofris even later in May of 2010. The court realizes that count one alleges a conspiracy beginning in approximately 2002 and includes as overt acts Blechman's prior bankruptcy petitions in 2002 and 2003, and Sofris placing Blechman's California residence into a trust in 2003. Besides being incongruent with the charge of conspiracy to commit contempt by committing bankruptcy fraud in June of 2010, these random allegations cannot be reasonably read to extend the scope of the conspiracy beyond the actual terms of the charged conspiracy. In the absence of any countervailing argument or rationale, the defendants' position that the

testimony is not an overt act of the charged conspiracy, as a matter of law, stands as sound and logically compelling and without contradiction.

On this issue of venue, the government tenders as another overt act that: "[t]here is also a tape and transcript of a phone call made by SOFRIS in the District of Kansas to undersigned counsel Hathaway, made in furtherance of an effort to exonerate SOFRIS and BLECHMAN of criminal intent." (Dk. 55, p. 6). The transcript of this recorded phone call shows the message was left on September 23, 2010. In that call, Sofris offers a "status" of the bankruptcy case noting the appointment of a Chapter 11 trustee and the filing of Sofris's declaration in response to a trustee's motion. Sofris summarizes the contents of his filed declaration and explains that as far as amending the schedules this would be done through the appointed trustee. Sofris notes that the "bankruptcy is ongoing and its done for other purposes, it's not to get out of that particular obligation, but, you know, you are going to argue whatever you need to argue." (Dk. 36-2). The fact of the phone call or its contents are not alleged anywhere in the indictment.

At the hearing, the defendants argued Sofris's phone call to Hathaway was made after receiving notice of the grand jury investigation

and after the omissions in the defendants' filings were revealed in the bankruptcy court proceedings. The defendants pointed out the government invited this phone call by starting its investigation and writing Sofris of the same. The defendants asserted this contact with Kansas could not be termed an overt act in furtherance of the charged conspiracy in count one. Again, the government chose not to respond to this argument at the hearing, and its written memorandum offers no more than the phone call was "made in furtherance of an effort to exonerate SOFRIS and BLECHMAN of criminal intent." (Dk. 55, p. 6).

Neither side has come forward with the legal research and analysis relevant to whether this phone call could be considered an overt act in furtherance of the charged conspiracy. The government posits that the phone call as an effort to "exonerate" or conceal the defendants' criminal intent is necessarily an act in furtherance of the conspiracy. The government cites no authority for this sweeping position. The defendants retort the phone call was not part of the conspiracy but simply a statement invited in response to the government's notice of an investigation. The defendants also offer no authority for their position.

The legal context that frames the parties' arguments reveals

the issue to be with the duration of the conspiracy as charged.  Like here, the duration of a conspiracy is significant for "new overt acts at different locations  . . . will afford the prosecution new choices for the place of trial." 2 S. LaFave & A. Scott, *Substantive Criminal Law* § 12.03 n. 97 (2010) (citing *See Brown v. Elliot*, 225 U.S. 392 (1912)).  The government's argument implies a blanket rule that would extend a conspiracy to include an accused's denial of criminal intent when offered in response to a government's notice of a grand jury investigation into what the government is already alleging to be criminal activity.  The case law does not support such a rule.

Courts have "concluded that a conspiracy terminated following the completion of the *only* objective alleged in the indictment."  *United States v. Qayyum*, 451 F.3d at 1220.  The Tenth Circuit in *Qayyum* discussed such a holding:

> In [*United States* v.] *Davis,* [533 F.2d 921 (5th Cir. 1976)], two men formed a business consortium and submitted a fraudulent contract proposal to the United States Department of Labor ("the Department") to train 450 unemployed people to be dry-cleaning employees.  *Id.* at 924-26.  They falsely stated in their proposal that nineteen consortium members had agreed to train the workers.  The defendants were charged with § 371 conspiracy, and "the sole object of the conspiracy as charged was to make false statements and representations to the Department."  *Id.* at 927.  The defendants had made the false statements in the proposal more than five years

17

before the return of the indictment.  The five-year statute of limitations therefore barred prosecution because the charged conspiracy "had run its course with the submission of the false statements to the Department . . ., and the subsequent issuance of the contract by the Department in reliance on the falsifications was not for purposes of the statute of limitations an overt act in furtherance fo the conspiracy."  *Id.* at 928.

451 F.3d at 1220.  In distinguishing its case from that rule, the panel had

first quoted the Supreme Court's key statements from *Grunewald v. United*

*States*, 353 U.S. 391 (1957):

> The Court rejected the notion that "the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret . . . to avoid detection and punishment after the central criminal purpose has been accomplished."  *Id.* at 405.  If courts allowed "a conspiracy to conceal to be inferred or implied from mere overt acts of concealment," such a practice "would extend the life of a conspiracy indefinitely."  *Id.* at 402.  The Court made it clear, however, that acts of concealment can sometimes further a criminal conspiracy.  "[A] vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime."  *Id.* at 405.  In some conspiracies, "the successful accomplishment of the crime necessitates concealment."  *Id.*

451 F.3d at 1219.[4]  The Tenth Circuit panel concluded that the indictment

---

[4]*See United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993) (quoting from *Grunewald*, 353 U.S. at 401-02, in part:  "Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators.")

before them "charged a continuing conspiracy in which 'the successful accomplishment of the crime necessitates concealment." 451 F.3d at 1220.

The  indictment here alleges a conspiracy with the sole objective of committing criminal contempt by the commission of bankruptcy fraud in the filings made in June of 2010.  The declaration of Gary Baddin, the bankruptcy analyst assigned to Blechman's bankruptcy case, states that he became aware of the defendant Blechman's conviction and forfeiture order on July 27, 2010, and that he called the defendant Sofris on the same day.  (Dk. 39-1, Baddin's Declaration ¶¶ 7-8, dated August 10, 2010).  Baddin further declares that Sofris also emailed him on the same day copies of Blechman's judgment in the criminal case.  *Id.* at ¶ 9.  As set forth in the grand jury testimony of senior bankruptcy analyst, Edward Walsh, the United States Trustee's Office promptly filed a motion to have a trustee appointed because the debtor Blechman was not represented by an appropriate fiduciary and because there was a failure to disclose the criminal forfeiture order and conviction.  (Dk. 32-1, pp. 42-43).  The Trustee's filing of this motion is mentioned in Baddin's Declaration of August 10, 2010.  (Dk. 39-1, ¶ 11).

The government presented all of the above matters to the grand jury, and none of these facts appear to be disputed for purposes of this venue question. In the court's judgment, these facts establish that the charged object of the conspiracy had been frustrated and the conspiracy abandoned as of July 27, 2010, when Sofris confirmed for the bankruptcy analyst and sent documentary evidence of the criminal conviction and forfeiture judgment. The indictment does not charge a continuing conspiracy by which the successful accomplishment of the contempt crime necessitates concealment. Consequently, Sofris's phone call to Hathaway on September 23, 2010, could not be termed an overt act that continued, completed, or furthered the conspiracy as charged in the indictment. The phone call, instead, is no more than an act of covering up after the crime, that is, after the central objective of the charged conspiracy had been frustrated and abandoned. "[E]very conspiracy will inevitably be followed by actions taken to cover the conspirators' traces." *Grunewald*, 353 U.S. at 402.

The government summarily argues that any exception to the general rule against dismissing an indictment based on the sufficiency of the evidence is inappropriate here. The government insists "the operative

facts are disputed" and it "objects to defendants' rendition of the facts and allegations of the indictment." (Dk. 55, p. 7). As set forth above, the court analyzed the issue of venue accepting the terms charged in the indictment and relying on the facts and documents used before the grand jury, neither of which the government has reasonably disputed. The court believes this case to be one of those rare instances when the charged conspiracy and the undisputed operative facts establish as a matter of law that the government is incapable of proving this district to be a proper venue for count one.[5] Thus, the court grants the defendants' motion to dismiss count one for the government is incapable of proving that the crime occurred in the District of Kansas.

Lastly, the defendants assert that since the government cannot prove venue on count one, then count two should also be dismissed for count two "cannot be proven without some alleged predicate offense." (Dk. 32, p. 7). The court finds no merit to this argument. Count two stands as a

---

[5]The defendants alternatively asked for a bill of particulars in order to know what overt acts allegedly occurred in Kansas in furtherance of the conspiracy. The government opposes this request saying the "defendants by this indictment and discovery know full well what the government intends to prove and how it intends to prove it." (Dk. 55, p. 23). The government's position certainly indicates there is nothing more for the court to know or understand in deciding this issue of venue.

separate charge and is not pled as dependent upon any proof or conviction

on count one.

**COUNT TWO: BLECHMAN'S MOTIONS TO DISMISS (Dks. 33 and 34) and SOFRIS'S MOTIONS TO JOIN (Dks. 49 and 50)**

The court grants the defendant Sofris's motions to join the

defendant Blechman's motions to dismiss as the arguments and relief

requested are applicable to both parties who are similarly situated for these

purposes.  In the first motion, it is argued that dismissal is required as only

judges, and not federal prosecutors, may initiate contempt proceedings.

The defendants ground this motion on the express terms of 18 U.S.C. §

3148 and some federal district court opinions interpreting it.  Section 3148

provides in pertinent part:

> (a) Available sanctions.--A person who has been released under
> section 3142 of this title, and who has violated a condition of his
> release, is subject to a revocation of release, an order of detention,
> and a prosecution for contempt of court.

> (b) Revocation of release.--The attorney for the Government may
> initiate a proceeding for revocation of an order of release by filing a
> motion with the district court. A judicial officer may issue a warrant for
> the arrest of a person charged with violating a condition of release,
> and the person shall be brought before a judicial officer in the district
> in which such person's arrest was ordered for a proceeding in
> accordance with this section. To the extent practicable, a person
> charged with violating the condition of release that such person not
> commit a Federal, State, or local crime during the period of release,
> shall be brought before the judicial officer who ordered the release

and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer--

(1) finds that there is--. . . .

(c) Prosecution for contempt.--The judicial officer may commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release.

18 U.S.C. § 3148.  The defendants argue that the plain terms of this statute authorize only a "judicial officer" to "commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release."  The Bail Reform Act defines a "judicial officer" as "any person or court authorized . . . to detain or release a person before trial or sentencing or pending appeal in a court of the United States."  18 U.S.C. § 3156(a)(1).  The defendants tender that their reading of this statute is "consistent with the historical understanding of the contempt power of the federal courts." (Dk. 33, p. 4).  Specifically, § 3148(c) recognizes that contempt is a unique power of the courts, "not an indictable crime."  *Id.*  The defendants argue the cross-reference to § 401 does not save the government, for § 3148(c) is the more specific provision and addresses who and when contempt may be initiated for alleged violations of supervised release.

In their second motion to dismiss, the defendants contend a prosecution for contempt initiated by grand jury indictment exceeds the

23

court's constitutional authority to punish contempt. From the premise that 18 U.S.C. § 401 merely codified the court's common law contempt powers, the defendants posit that contempt was not an indictable offense under common law and that Fed. R. Crim. P. 42 establishes criminal contempt procedures consistent with the common law. Namely, the court is to initiate or refer a contempt matter pursuant to its own inherent authority in order to vindicate its own integrity. In the defendants' estimation, the prosecutor is without authority to initiate contempt and for it to have this power would be contrary to the common law and in violation of the separation of powers. The defendants assert that a prosecutor from an underlying criminal case should not be allowed to pursue and prosecute an indictment for contempt based on a release order from that prior case. This power should reside with the courts, and Congress did not intend § 401 to expand the common law powers of contempt.

The government reads § 3148 as not creating a new substantive crime of contempt but as merely incorporating the offense as set out at § 401 and as "extending authority to the judicial officer . . . to initiate a prosecution for contempt pursuant to that statute." (Dk. 55, p. 8). The government notes the Supreme Court's direct hand in developing the

law on contempt and its observation "that we have come to regard criminal contempt as 'a crime in the ordinary sense,'" but that this "does not mean that any prosecution of contempt must be considered an execution of the criminal law in which only the Executive Branch may engage." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 799-800 (1987) (quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968)).  The government stands on its broad discretion to prosecute under § 401(3) and offers that courts are "ill-equipped to evaluate strength of case, prosecution's general deterrence value, government's enforcement priorities, and case's relationship to government's overall enforcement plan."  (Dk. 55, p. 11, n. 3).  Finally, the government notes an established line of cases demonstrating the government may initiate contempt prosecutions.

<u>Analysis</u>

The interaction between § 3148(c) and § 401 in deciding who may initiate contempt charges appears to be an issue of first impression in this circuit.  Research shows only a few other courts to have addressed this issue, and some of those decisions do not offer much more than a summary holding.  In the court's judgment, the statutory interpretation problems are best resolved from understanding the relevant historical

25

practices and deciding whether the relevant statutes were intended to change those practices or to clarify them.

Not discussed by the parties is whether § 3148 even applies here. Count two charges that the contempt offense was committed on or about June 15, 2010. At that time, the defendant was on bond pending appeal pursuant to an order issued by Judge Robinson on January 14, 2010. (D. Ct. No. 08-40008, Dk. 195). Judge Robinson entered that order of release pending appeal pursuant to 18 U.S.C. § 3143(b). *Id.* The order further provided that the terms of the prior order setting conditions of release would remain in force and effect pending appeal. *Id.* Thus, the contumacious actions are charged as having occurred when the defendant was on release under § 3143(b) but pursuant to the same conditions initially imposed by the court when the defendant was on release under § 3142.

As laid out in subsection (a), § 3148 addresses the "available sanctions" for when "[a] person who has been released under section 3142 of this title" violates "a condition of this release." *See United States v. Bronson*, 2007 WL 2455138, at *10 (E.D.N.Y. Aug. 23, 2007) ("Section 3148(a) sets out the available sanctions for one who violates pretrial

26

release."). Subsection (a) then lists the available sanctions, and the remaining subsections address those sanctions individually. Since defendant Blechman was on release under § 3143(b), not § 3142, do the terms of § 3148 even apply here? It's true that § 3143 incorporates by reference certain terms of § 3142, but that's not the same as saying a court that releases a defendant pending appeal under § 3143(b) also has released the defendant under § 3142. A rationale or reason for § 3148 to address only releases under § 3142 is not expressed in the statutes. Nor is one readily apparent from the face of the statutes. With that said, the court also lacks any legal basis for overlooking this plain and unambiguous limitation on the scope of § 3148. While this is reason enough for rejecting summarily the defendants' arguments based on the particular wording of § 3148(c), the court will discuss only briefly the balance of the defendants' arguments.

Subsection (c) to § 3148 directly provides that: "The judicial officer may commence a prosecution for contempt, under § 401 of this title, if the person has violated a condition of release." The Act's definition of "judicial officer" cannot be stretched to include the prosecution or the grand jury. 18 U.S.C. § 3156(a)(1) ("any person or court authorized . . . to detain

27

or release a person before trial or sentencing pending appeal in a court of the United States.").  Despite these seemingly plain terms, the Ninth Circuit has held:

> First, Mohsen argues that the conviction should be set aside because the contempt prosecution was initiated by the grand jury's indictment, not by the judge who set the conditions of his release. This is incorrect. Both the trial court and the grand jury have power to bring contempt proceedings under 18 U.S.C. § 3148 and 18 U.S.C. § 401. *See, e.g., United States v. Armstrong*, 781 F.2d 700, 703-04 (9th Cir. 1986); *Steinert v. U.S. Dist. Ct. for the Dist. of Nevada*, 543 F.2d 69, 70-71 (9th Cir. 1976).

*United States v. Mohsen*, 587 F.3d 1028, 1032 (9th Cir. 2009) ("convicted for contempt of court for applying for a new passport to flee the country in violation of his conditional pre-trial release."), *cert. denied*, 131 S. Ct. 200 (2010).  Other than its holding, the Ninth Circuit offers nothing specific about its interpretation of these statutes.  The cited decisions of *Armstrong* and *Steinert* recognize that indictments for criminal contempt under § 401 are proper.  By inference then, *Mohsen* is appellate authority for the proposition that a grand jury may indict a person violating a condition of pre-trial release for contempt under § 401 without offending the terms of § 3148.

The wording is plain that § 3148(a) lays out the "available sanctions" for violating a release order.  This subsection does not expressly

recognize the possibility of other sanctions being "available." At the same time, it does not expressly reserve these sanctions as the "only" ones available for the respective actors. The government asks the court to read § 3148(c) as simply incorporating § 401, as clarifying the court's authority to initiate a § 401 contempt prosecution, but not as limiting who may initiate the contempt prosecution. For this reason, the government generally relies on the body of case law interpreting and enforcing § 401.

The government's approach certainly squares with the holding in *Mohsen*, and it is not the only time the Ninth Circuit has interpreted § 3148 as a non-exclusive listing of sanctions. In *United States v. Vaccaro*, 51 F.3d 189, 191-92 (9th Cir. 1995), the court preserved judicial authority to order forfeiture of a bail bond upon breach of a condition of release even though this sanction is not listed in § 3148. The Court held that the Bail Reform Act did not repeal forfeiture provisions in Fed. R. Crim. P. 46(e) and that enforcement of a bond forfeiture was a civil action, not a criminal proceeding. In addition, the Court offered this on the legislative purpose and history to § 3148:

> Section 3148(a) was intended to add to the court's arsenal of sanctions by providing for revocation of release, detention, and contempt. These powers were added to meet the criticism that there were not adequate sanctions for violations of release conditions. *See*

29

Senate Report No. 98-225, 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 3182, 3217. Any argument that Congress intended to make these new remedies exclusive flies in the face of the expressed legislative intent to add new sanctions.

*Id.* at 192. The same Senate Report offered the following on 3148(c):

Subsection (c) emphasizes that the court may impose contempt sanctions if the person has violated a condition of his release. This carries forward the provisions of existing 18 U.S.C. 3151.

Senate Report No. 98-225, 98th Cong., 2d Sess., reprinted in 1984

U.S.C.C.A.N. 3182, 3219. Section 3151, the predecessor of § 3148(c)

provided: "Nothing in this chapter shall interfere with or prevent the

exercise by any court of the United States of its power to punish for

contempt." Neither the express terms of § 3148(c) nor its legislative history

reveal a Congressional intent to have the contempt sanction under §

3148(c) function differently than what had occurred under its predecessor.

A closer look at the historical practice of contempt prosecutions

supports the government's position. The defendants correctly cite the

plethora of case law acknowledging contempt as an inherent judicial

power. What the defendants do not provide is a line of authority holding

that contempt "is not an indictable crime to be utilized by federal

prosecutors in the absence of a court's directive." (Dk. 34, p. 3). While

extending more procedural protections to contempt proceedings, the

Supreme Court has not restricted the power to initiate contempt

proceedings to either the courts or the executive branch.  For example, in

*Young*, the Court said:

> The fact that we have come to regard criminal contempt as "a crime
> in the ordinary sense," *Bloom* [*v. Illinois*], *supra*, 391 U.S. [194], at
> 201, 88 S.Ct., at 1481, [(1968)] does not mean that any prosecution
> of contempt must now be considered an execution of the criminal law
> in which only the Executive Branch may engage. Our insistence on
> the criminal character of contempt prosecutions has been intended to
> rebut earlier characterizations of such actions as undeserving of the
> protections normally provided in criminal proceedings.  *See, e.g., In
> re Debs*, 158 U.S. 564, 596, 15 S.Ct. 900, 911, 39 L.Ed. 1092 (1895)
> (no jury trial in criminal contempt actions because a court in such a
> case is "only securing to suitors the rights which it has adjudged them
> entitled to").  That criminal procedure protections are now required in
> such prosecutions should not obscure the fact that these proceedings
> are not intended to punish conduct proscribed as harmful by the
> general criminal laws.  Rather, they are designed to serve the limited
> purpose of vindicating the authority of the court. In punishing
> contempt, the Judiciary is sanctioning conduct that violates specific
> duties imposed by the court itself, arising directly from the parties'
> participation in judicial proceedings.

*Young*, 481 U.S. at 799-800.  Even with the distinction in the purpose and

design of contempt proceedings from the prosecution of general criminal

laws, the Court preserved judicial authority to initiate a contempt

prosecution without excluding the executive branch's authority to

prosecute regardless of judicial directive.

Prior to *Young*, the Supreme Court in *Green* heard the appeal

of contempt convictions based on the defendant's violations of the district

court's order requiring their surrender after appeal to serve the sentences

imposed on the underlying Smith Act convictions. *Green v. United States*,

356 U.S. 165, 167 (1958), *overruled in part on other grounds*, *Bloom v.*

*Illinois*, 391 U.S. 194 (1968)). After more than four years as fugitives, the

defendants voluntarily surrendered, and "the United States instituted

criminal contempt proceedings against the petitioners in the District Court

for willful disobedience of the surrender order in violation of 18 U.S.C. §

401." *Id.* The Court in *Green*, in part, rejected the argument that § 401

"does not embrace an order requiring the surrender of a bailed defendant."

*Id.* at 169. The Court reached this conclusion after considering arguments

based on historical practice, policy purposes and precedent:

> It may be true, as petitioners state, that this case and those of the
> other absconding Dennis defendants, *United States v. Thompson*, 2
> Cir., 214 F.2d 545; *United States v. Hall*, 2 Cir., 198 F.2d 726,
> provide the first instances where a federal court has exercised the
> contempt power for disobedience of a surrender order. But the power
> to punish for willful disobedience of a court order, once found to exist,
> cannot be said to have atrophied by disuse in this particular instance.
> Indeed, when Congress in 1954 made bail-jumping a crime in 18
> U.S.C. § 3146, 18 U.S.C.A. § 3146, it expressly preserved the
> contempt power in this very situation. We find support in neither
> history nor policy to carve out so singular an exception from the clear
> meaning of § 401(3).

*Green*, 356 U.S. at 173. Certainly, Supreme Court precedent recognizes

that the violation of a surrender order, not that unlike a violation of a release order, may be prosecuted by the government under § 401(3).

Without addressing *Green*, the defendants argue that § 401 only codifies a court's power to sanction disobedient conduct and does not authorize the government's prosecution of a crime. The defendants further infer from the terms of Fed. R. Crim. P. 42 that contempt remains exclusively a judicial remedy to vindicate a court's authority and not an indictable offense. Whatever the facial and logical appeal that attends these arguments, precedent firmly accepts contempt as an indictable offense.

"It is well settled that criminal contempts, both in the federal system and in state jurisdictions, need not proceed on an indictment, although an indictment is a permissible way to institute criminal contempt proceedings." Sara Beale *et al.*, *Grand Jury Law and Practice* § 11:20 (2d ed. 2010) (accompanying footnote cites ten published federal court of appeal decisions in support of the permissibility of an indictment). Rule 7 of the Federal Rules of Criminal Procedure except "criminal contempt" from the requirement of prosecution by an indictment. Fed. R. Crim. P. 7(a)(1). This exception was added in 2002, and the Advisory Committee Notes

offer, in part, "[w]hile indictment is not a required method of bringing felony criminal contempt charges, however, it is a permissible one. *See United States v. Williams*, 622 F.2d 830 (5th Cir. 1980). No change in practice is intended." Fed. R. Crim. P. 7(a)(1) advisory committee's note to 2002 Amendments. Rule 42 also was substantively changed in 2002. The 2002 advisory committee's notes to Rule 7 undermine the defendants' position that Rule 42 should be construed as treating criminal contempt as an exclusive judicial remedy and not indictable. *Cf. United States v. Cohn*, 586 F.3d 844, 849 (11th Cir. 2009) ("Criminal contempt need not be charged by indictment. *See* Fed. R. Crim. P. 7(a)(1); Fed R. Crim. P. 42(a).").

The decision of *United States v. Williams*, 622 F.2d 830 (5th Cir. 1980), *cert. denied*, 449 U.S. 1127 (1981), certainly can be said to represent what the courts had allowed in the practice under the predecessor to § 3148(c). The court recognized that a violation of a court order restricting travel as a condition of release pending appeal constitutes criminal contempt. *Williams*, 622 F.2d at 836. As for whether the courts have exclusive authority to initiate contempt charges, the Fifth Circuit rejected that procedural proposition:

Criminal contempt charges may be initiated by indictment. *United States v. Leyva*, 513 F.2d 774 (5th Cir. 1975); *Steinert v. United States District Court for the District of Nevada*, 543 F.2d 69 (9th Cir. 1976); *United States v. Avery*, 447 F.2d 978 (4th Cir. 1971); *United States v. Mensik*, 440 F.2d 1232 (4th Cir. 1971). In these cases the indictments were for violations of 18 U.S.C. s 401(3). The prosecutions were commenced without any prior or precipitating action by the court.

The final inquiry is whether criminal contempt requires priming or initiating action by the court before a prosecutor or law enforcement officer may act upon the offense. We agree with the Second Circuit's conclusion that no action by the court is necessary before an indictment for criminal contempt may be handed up, *United States v. Morales*, 566 F.2d 402, 404 (2nd Cir. 1977):

> Morales' contention that criminal contempt may not be prosecuted by indictment unless a judge first refers the matter of the alleged act of contempt to the grand jury lacks merit. Many cases have tacitly or explicitly recognized the power of grand juries to hand down indictments charging criminal contempt. *E. g., United States v. DeSimone*, 267 F.2d 741, 743-44 (2d Cir.), *vacated as moot*, 361 U.S. (827), 80 S.Ct. 74, 4 L.Ed.2d 70 (1959) (grand jury presentment); *Steinert v. United States District Court*, 543 F.2d 69, 70-71 (9th Cir. 1976); *United States v. Mensik*, 440 F.2d 1232 (4th Cir. 1971) (*per curiam*); *United States v. Sternman*, 415 F.2d 1165 (6th Cir. 1969), *cert. denied*, 397 U.S. 907, 90 S.Ct. 903, 25 L.Ed.2d 88 (1970); *United States v. Eichhorst*, 544 F.2d 1383 (7th Cir. 1976); *United States v. Bukowski*, 435 F.2d 1094, 1103 (7th Cir. 1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971).

Further support for the proposition that contempt is an offense dehors any initiating action by the court is found in the holding and rationale of *Pendergast v. United States*, 317 U.S. 412, 63 S.Ct. 268, 87 L.Ed. 368 (1943).

*Williams*, 622 F.2d at 838; *see also United States v. Cartwright*, 696 F.2d

344, 349 (5th Cir. 1983). For that matter, the terms of Rule 42 "do not

purport to vest exclusive authority to initiate contempt charges in the court."
*United States v. Armstrong*, 781 F.2d 700, 704 (9th Cir. 1986) (citations omitted). It has long been recognized that a grand jury may "initiate contempt charges without any prior action by the court." *Id.*; *see Blalock v. United States*, 844 F.2d 1546, 1553 (11th Cir. 1988) ("contempts can be charged by grand jury indictment"). More recent federal court of appeals' decisions are in accord with these practices. *See United States v. Mohsen*, 587 F.3d 1028, 1032 (9th Cir. 2009) (grand jury indictment appropriate for contempt proceedings under § 401 for a violation of conditional pre-trial release); *United States v. Henry*, 519 F.3d 68 (1st Cir. 2008) (indicted and convicted of a drug offense and for contempt in violating a condition of pre-trial release by the commission of this drug offense), *cert. denied*, 129 S. Ct. 423 (2008).

The weight of the above authority convinces the court that the defendants' arguments are deficient and that the government did not exceed its lawful authority by indicting on criminal contempt for a violation of the conditions of the release order pending appeal. The court has read and is not persuaded by the federal district court decisions cited by the

defendants on this issue.[6]  For all the above reasons, the court denies the

the defendants' motions to dismiss count two (Dks. 33 and 34).

**SOFRIS'S MOTION TO DISMISS COUNT 2 BECAUSE ONE CANNOT
AID OR ABET CONTEMPT (Dk. 48).**

Reciting certain operative facts beyond those alleged in the

indictment and asserting these facts to be undisputed, the defendant Sofris

argues for dismissal in that the government will be unable to prove he

acted with an intent to defraud.  Specifically, Sofris notes that the criminal

forfeiture judgment "was left out of the initial filings" but that "the judgment

was disclosed to the trustee immediately upon the trustee's inquiry in

─────────────────────

[6]The defendants cite *United States v. Bronson*, 2007 WL 2455138
(E.D.N.Y. 2007), in which the court dismissed a criminal contempt count
from the indictment by strictly reading § 3148 as giving only a judicial
officer the authority to initiate contempt proceedings.  The *Bronson* court
agreed with the approach in *United States v. Herrara*, 29 F. Supp. 2d 756
(N.D. Tex. 1998), of narrowly and strictly reading § 3148 as effectively
changing all practices to date and as vesting exclusive authority for each of
the different remedies to the explicitly named entities.  The *Herrara* opinion
does not purport to reconcile itself with the Fifth Circuit decisions in
*Williams* and *Cartwright* cited above.  The *Herrara* approach presumes too
much importance in Congress choosing to name an actor with an available
sanction when there is nothing more specific in the statute to suggest or
justify concluding that Congress intended to vest exclusive authority in the
named actor and to change the established practices to date.  This likely
explains why these decisions have gained little traction and have been
largely overlooked.  In that respect, the magistrate judge's decision in
*United States v. Roland*, 2005 WL 2318866 (E.D. Va. 2005), cited by the
government, lays out the incongruities that result from applying the
approach taken in *Herrara*.

accordance with bankruptcy rules of procedure." (Dk. 48, p. 7). Because he later corrected the omission, Sofris contends he could not be sanctioned under the bankruptcy rules. "Thus if the actions which constitute the alleged fraud could not even be punished as a rules violation, surely the evidence of fraud is completely lacking. As a matter of law, a charge of fraud, therefore, does not lie." (Dk. 48, p. 7). Additionally, Sofris argues that because the initial bankruptcy filings at issue could have been corrected at multiple points in later proceedings there was little risk of misleading creditors or court officials.

The government responds that the operative facts are in dispute and that the government alleges a fraud to conceal Blechman's largest debt, the million dollar forfeiture judgment. The government notes that Sofris not only failed to include the judgment on the initial filings, but his intent to conceal this fact is further evidenced by Sofris not disclosing it during the 341 hearing or in the pre-hearing interview with bankruptcy analyst Gary Baddin. The government cites the bankruptcy rules that required the schedules at issue to have been filed with a verification or unsworn declaration stating that the information is true and correct. As for Sofris's claim that he intended to disclose the judgment sometime later, the

government rightly argues this only creates a disputed factual issue on the defendant's intent to conceal and defraud for the trier of fact. The government notes dismissal is inappropriate simply because Sofris denies an intent to conceal and represents that he would have disclosed the forfeiture judgment at some point during the bankruptcy process.

As briefed and argued, the operative facts to count two are in dispute regarding intent. The defendant's arguments do not establish as a matter of law that the government will be unable to prove an intent to conceal. That the omissions occurred early in the bankruptcy proceedings, were not the subject of bankruptcy court sanctions, and were promptly cured do not disprove, as a matter of law, the defendant Sofris's intent to conceal. These circumstances certainly will be relevant at trial and at any subsequent proceeding necessary to determine an appropriate contempt sanction. The defendant's motion is denied.

**MOTION TO TRANSFER VENUE (Dks. 35 and 40)**

The court grants the defendant Sofris's motion to join (Dk. 40) the defendant Blechman's motion to transfer venue to the Central District of California (Dk. 35), as he is similarly situated and the arguments apply with equal force to his position. The government summarily responds to this

motion noting that venue for count one is appropriate in either district but that "only the District of Kansas has venue to vindicate the violation of the [release] order entered in this District."  (Dk. 55, p. 18).  The government's memorandum includes an earlier section that cites *Dunham v. United States*, 289 F. 376, 378 (5th Cir 1923), for the proposition that the District of Kansas is the only proper venue for the contempt charge.  (Dk. 55, p. 6).

"[T]he government must prosecute an offense in a district in which the offense was committed."  Fed. R. Crim. P. 18.  Rule 21(b) allows a court to transfer for convenience the case or one or more counts "to another district for the convenience of the parties and witnesses and in the interest of justice."  Before 1966, Rule 21 limited a venue change in those cases only "where venue existed in more than one district."  Fed. R. Crim. P. 21(b) 1966 advisory committee's note.  As amended in 1966, Rule 21 recognizes there may be instances when the "convenience of the parties and witnesses and the interest of justice would best be served by trial in a district in which no part of the offense was committed."  *Id.*  (citations omitted).

The Tenth Circuit has held that "'change of venue in a criminal case is discretionary, and a trial judge's decision on the matter is entitled to

deference." *United States v. Williams*, 897 F.2d 1034, 1036-1037 (10th

Cir. 1990) (internal quotation marks and citations omitted), *cert. denied*,

500 U.S. 937 (1991); *see also United States v. Neal*, 718 F.2d 1505, 1510

(10th Cir. 1983), *cert. denied*, 469 U.S. 818 (1984). Even if the facts

support granting a change of venue request under Rule 21(b), the district

court's denial of the request will not be reversed absent compelling

circumstances. *See United States v. Calabrese*, 645 F.2d 1379, 1384

(10th Cir.), *cert. denied*, 451 U.S. 1018 (1981).

The government makes no effort to dispute that most of the

factors related to the convenience of the defendants and the location of the

evidence favor a transfer to the Central District of California.[7] The case law

on contempt, however, indicates there is a special element that tips the

balance against a transfer for convenience of the parties and witnesses.

Venue on a contempt proceeding "is fundamentally connected to the court

issuing the order" that is being charged as violated. *United States v.*

*Lawrence*, 54 F.3d 777, 1995 WL 302247, at 1 (6th Cir.) (Table) (citing

---

[7]This does not mean that the court accepts without question the
defendants' arguments on these different factors. In fact, the court
believes the defendants overstate the degree of inconvenience to them
particularly considering the limited scope of the charge remaining in this
case.

*Waffenschmidt v. Mackay*, 763 F.2d 711, 716 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986)), *cert. denied*, 516 U.S. 820 (1995).  In *Myers v. United States*, 264 U.S. 95 (1924), the Supreme Court rejected the argument that a district court's contempt power did not extend to contumacious acts occurring outside the court's venue and noted the court's inherent power "to enforce obedience, something they must possess in order properly to perform their functions."[8]  264 U.S. at 103; *see United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985) ("The contumacious conduct may be punished in the district where the order was issued, whether or not the acts occurred elsewhere, the effects of the acts fell elsewhere or the evidence thereof is located elsewhere.").  The Second Circuit in *Reed* further explained:

> Where essential elements of a crime are related to the integrity of the proceedings of judicial tribunals in districts other than where the acts took place, for example, those tribunals should not be left to the generosity of prosecutors or judges in other districts to defend their powers. Such officials may have little familiarity with the underlying case. They also may have little reason other than considerations of comity to enforce orders from other districts and limited resources to do so. The district in which the court order was issued is thus said to

---

[8]Subsequent Supreme Court decisions on contempt do call into question some of what is said in *Myers,* but the Supreme Court in *Bloom* did not overrule *Myers* or its holding on the issue of venue.  *See United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 665-66 (2nd Cir. 1989), *cert. denied*, 493 U.S. 1021 (1990).

have sufficient contact with the criminal contempt to be the site of the prosecution.

*Id. See also United States v. Eyerman*, 660 F.Supp. 775, 777-778 (S.D.N.Y. 1987).

The court is persuaded that the interests of justice do not favor a transfer here. The remaining charge is criminal contempt of an order of release pending appeal issued by a federal court in the District of Kansas. The alleged contumacious behavior is the failure to disclose in bankruptcy proceedings certain facts arising from the underlying criminal convictions that occurred in the District of Kansas. As the case law cited and quoted above supports, this court has a unique and compelling interest to vindicate its release orders, to protect its criminal forfeiture orders, and to assure the prompt administration of justice. The court denies the defendants' motion to transfer.

## MOTIONS FOR A JAMES HEARING (Dks. 36 and 41)

The defendant Sofris's motion initially requests notice of any co-conspirator statements to be offered at trial pursuant to Fed. R. Evid 801(d)(2)(E). (Dk. 41). At the hearing, counsel for Sofris conceded the government's proffer in its written response appears to satisfy the notice request. The government's proffer describes three groups of statements:

43

(1)  the defendants' statements "made during the course of what was referred to as 11 U.S.C. Section 341 hearings in bankruptcy court," the transcripts of which have been provided to the defendants; (2) the testimony of Sofris on January 15, 2009, at Blechman's criminal trial; (3) the tape and transcript of Sofris's telephone call to AUSA Hathaway.  (Dk. 55, p. 21).  Both defendants request in advance of trial a *James* hearing, as the strongly preferred approach, to determine the admissibility of the different proffered statements.   The defendant Blechman doubts that the government can prove a conspiracy necessary for admitting Sofris's statements at the bankruptcy hearings and to the AUSA Hathaway.  The defendant Blechman also contends that Sofris's telephone message for Hathaway was not made during the course of or in furtherance of the alleged conspiracy.  The government responds that a pretrial *James* hearing would be lengthy and would duplicate testimony to be offered at trial.  The government represents that the foundation for these statements will be laid by testimony from Ed Walsh, Senior Bankruptcy Analyst with the U.S. Trustee's office.  Because the defendants have been furnished with the grand jury testimony of Walsh, the government posits that the defendants will not be surprised by the foundation that Walsh will offer.

44

Thus, the government asks the court to wait until trial but condition admissibility on the proper foundation being laid through the lengthy testimony to be offered at trial.

Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, a statement is not hearsay if it is made by "a co-conspirator of a party during the course and in furtherance of the conspiracy." Before a co-conspirator's statement can be admitted pursuant to Rule 801(d)(2)(E), the trial court must determine by a preponderance of the evidence that: (1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy. *United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir. 1997). In deciding whether the prerequisites for admission of the co-conspirator's out-of-court statement have been satisfied, the court may consider the hearsay statement sought to be admitted in addition to the independent evidence presented. *Id.*; *United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir. 1990), *cert. denied*, 498 U.S. 1050 (1991). "'[T]here need only be some independent evidence linking the defendant to the conspiracy.'" *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (quoting *United*

*States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir.1987)). To be sufficient, the independent evidence need not be substantial, but it must be something other than the proffered statement. *Id.* "Statements by a conspirator are in furtherance of the conspiracy when they are 'intended to promote the conspiratorial objectives.'" *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir.) (quoting *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)), *cert. denied*, 551 U.S. 1172 (2007).

Tenth Circuit law recognizes that "a district court can only admit coconspirator statements if it holds a *James* hearing or conditions admission on forthcoming proof of a 'predicate conspiracy through trial testimony or other evidence.'" *United States v.* Townley, 472 F.3d at 1273 (quoting *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995)). The Tenth Circuit has frequently reiterated its "strong preference for James proceedings." *Id.* (citations omitted). A trial court may determine the admissibility requirements prior to or during trial by way of a *James* hearing held outside of the presence of the jury, or it may provisionally admit the statement subject to proof at trial that connects up the statements to the predicate conspiracy elements. *United States v. Powell*, 982 F.2d 1422, 1432 (10th Cir. 1992), *cert. denied*, 507 U.S. 946 (1993); *United States v.*

*Hernandez*, 829 F.2d 988, 994 (10th Cir. 1987) ("[D]ue to intertwining nature of the non-hearsay testimony and the challenged statements, "the court was justified in provisionally admitting the statements in lieu of following the preferred procedure), *cert. denied*, 485 U.S. 1013 (1988).

A defendant has no distinct right to a pretrial hearing with regard to the conspiracy determination." *United States v. Hernandez*, 829 F.2d at 994 (citing in part *United States v. v. Monaco*, 700 F.2d 577, 581 (10th Cir.1993) ("a trial court has no obligation to determine admissibility of possible hearsay at the pretrial state.")). There is no abuse of discretion in denying a pretrial *James* hearing when the pretrial hearing would be lengthy and would entail calling and recalling officers and witnesses in an elaborate and repetitive procedure. *Hernandez*, 829 F.2d at 994. When justified by the length, complexity and size of a conspiracy, as well as the number of co-conspirator statements involved, this court has waited until trial when it is in a better position to analyze the admissibility of specific co-conspirator statements. "[I]n certain instances where it is not reasonably practicable to require the showing to be made before admitting the evidence, the court may admit the statements subject to being connected up." *United States v. Cardall*, 885 F.2d 656, 669 (10th Cir.

1989) (quotations and citations omitted).  The decision to deviate from the preferred procedure resides within the trial court's sound discretionary judgment, but absent a substantial reason the preferred order of proof should be followed.  *United States v. Troutman*, 814 F.2d 1428, 1448 (10th Cir. 1987).  If it does not hold a *James* hearing, the district court must make, at least, preliminary factual findings on the record regarding the admissibility of the statements.  *See United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir. 1993) (en banc).

Neither the government's brief nor the transcripts attached to the parties' pleadings convince the court that a pre-trial *James* hearing would be lengthy and would require calling and recalling officers and witnesses in an elaborate and repetitive manner.  The conspiracy allegations here are not far-ranging in participants and events.  The court is persuaded that a *James* hearing is particularly critical in this case.  First, the conspiracy allegations offered by the government are the subject of some confusion and controversy.  Second, there is a serious issue over the duration of the alleged conspiracy.  Finally, the government is relying on the admissibility of Sofris's telephone message in order to seek the disqualification of Blechman's trial counsel.  For these reasons, the court

will schedule promptly a *James* hearing to precede immediately the court's hearing on the government's motions for disqualification.

IT IS THEREFORE ORDERED that the defendant Blechman's motion to dismiss count one for insufficiency of the evidence as a matter of law, or alternatively, motion for a bill of particulars (Dk. 32) and the defendant Sofris's motion to dismiss for failure to establish venue and motion to join co-defendant's motion to dismiss for insufficiency of evidence or alternatively, motion for bill of particulars (Dk. 39) are granted and count one charging conspiracy to commit criminal contempt in violation of 18 U.S.C. § 371 is dismissed;

IT IS FURTHER ORDERED that the the defendant Sofris's motions to join (Dks. 40, 49, and 50) are granted;

IT IS FURTHER ORDERED that the defendant Blechman's motions to dismiss count two (Dks. 33 and 34) are denied;

IT IS FURTHER ORDERED that the defendant Sofris's motion to dismiss count two (Dk. 48) is denied;

IT IS FURTHER ORDERED that the defendant Blechman's motion to transfer venue (Dk. 35) is denied;

IT IS FURTHER ORDERED that the defendant Blechman's

motion for a *James* hearing (Dk. 36) and the defendant Sofris's motion for

notice of co-conspirator hearsay evidence and for *James* hearing (Dk. 41)

are granted with the court to notify the parties of a hearing date on these

motions and on the government's pending motions to disqualify

Blechman's counsel.

      Dated this 23rd day of March, 2011, Topeka, Kansas.


            s/ Sam A. Crow
            Sam A. Crow, U.S. District Senior Judge