IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

                    Plaintiff,

        Vs.                                    No.  10-40095-01/02-SAC

ROBERT ANDREW BLECHMAN
and MICHAEL N. SOFRIS,

                    Defendants.


MEMORANDUM AND ORDER

        The case comes before the court on the following pretrial

motions filed in response to the government's first superseding indictment.

The defendant Robert Andrew Blechman has filed:  motion to strike

language in indictment as surplusage (Dk. 77); motion to dismiss count one

for lack of venue (Dk. 78); and motion to renew (Dk. 79) his prior motions

to dismiss count two (Dk. 33), motion to dismiss count two as an

unconstitutional exercise of the court's power of contempt (Dk. 34), motion

to transfer venue (Dk. 35), and motion for a *James* hearing (Dk. 36).  The

defendant Michael N. Sofris has filed a motion to strike prejudicial

surplusage from the indictment (Dk. 80); motion to dismiss indictment (Dk.

81); motion to join defendant Blechman's motion to dismiss count one for

lack of venue (Dk. 83); and motion to join the defendant Blechman's motion

to renew prior motions (Dk. 84).  The government has filed its consolidated

response.  (Dk. 89).

On June 8, 2011, the court heard the parties' oral arguments on these motions.  The court granted the defendant Blechman's oral motion to join the defendant Sofris's motions (Dks. 80 and 81).  The government had no objection to Blechman's motion to join.

**INDICTMENTS**

The original indictment and superseding indictments charge both defendants with a single count of conspiracy in violation of 18 U.S.C. § 371 and a single count of criminal contempt, 18 U.S.C. §§ 2 & 401 with reference to § 1348(c).  The defendants filed pretrial motions challenging both counts of the original indictment, and the court, in part, granted the defendants' motion to dismiss count one, as "the undisputed operative facts [peculiar to the issue of venue] establish as a matter of law that the government is incapable of proving this district to be a proper venue for count one."  (Dk. 59, p. 21).

In its consolidated response, the government has chosen to reveal that the court's prior order prompted its counsel to consult with its appellate section over appealing that order.  The government, however, did not take an immediate appeal.  Instead, "it was decided that this Court's concerns could be and should be first addressed by a Superseding Indictment to correct defects this Court identified in the original indictment."

(Dk. 89, p. 2).

Of the changes found in the superseding indictment, the more significant ones are as follow. There are five additional pages of background allegations, most of which are set forth under the heading of "THE CONSPIRACY." (Dk. 62, pp. 2-10). The specific charging language in count one clearly establishes the conspiracy charge under 18 U.S.C. § 371 to be an agreement to commit the criminal offense of contempt, 18 U.S.C. § 401(3), by committing the crime of making a material false declaration, 18 U.S.C. § 152, in the Statement of Financial Affairs and Schedule F in Blechman's bankruptcy petition filed on June 15, 2010. (Dk. 62, pp. 10-11).[1] For ease of later reference, the court will set out some of the additional allegations that are pertinent to the defendants' pending motions.

The first ten pages of the superseding indictment lay out twenty paragraphs of background allegations with seventeen of them included under the title of "THE CONSPIRACY." (Dk. 62). Paragraph four opens this section with the allegation that:

It was the object of the conspiracy that starting in approximately

_____

[1]In its prior order, the court noted the defendants' expressed confusion over what offenses they were "being charged with conspiring to commit." (Dk. 59, p. 10). The court relied on the government's responsive memorandum (Dk. 55, p. 5) in finding, "as a matter of law, that count one charges a conspiracy with the object of violating the contempt statute by committing the crime of bankruptcy fraud." (Dk. 59, pp. 11-12) (footnote omitted). The superseding indictment essentially confirms the court's prior finding on what the government intended to charge in count one.

2002, the precise date being unknown to the Grand Jury, BLECHMAN and SOFRIS commenced using the bankruptcy system to serially file petitions to access the automatic stay provisions of the United States Bankruptcy Code, and commit bankruptcy fraud, as a litigation tactic to prevent foreclosure on BLECHMAN's personal residence at 11901 Lucile Street, Culver City, California. On November 8, 2002, BLECHMAN filed his first petition, a Chapter 7 bankruptcy petition in Bankruptcy Court in the Central District of California. Upon filing the bankruptcy petition the automatic stay provision of the Bankruptcy Code prevented BLECHMAN's creditors from foreclosing on his residence. Through serial filings and creations of trusts over the course of the next eight to ten years BLECHMAN and SOFRIS enabled BLECHMAN to stay in the house without making any payments of mortgage, rents or interest on the residence. These bankruptcy filings and creations of trusts were overt acts in furtherance of their conspiracy.

(Dk. 62, pp. 2-3). Paragraph five alleges that "[o]n September 11, 2003, as an overt act in the continuing conspiracy between BLECHMAN and SOFRIS," a trust was created. *Id.* at 3. Paragraph six alleges Blechman filed bankruptcy petitions in 2007 and 2008. *Id.* Paragraphs seven through fourteen allege details regarding the prosecution and conviction of the defendant Blechman in case number 08-40008-JAR. Another overt act is included in ¶ 10 that alleges:

The federal criminal case against Blechman, case number 08-40008-JAR, proceeded to jury trial. During the trial MICHAEL N. SOFRIS (hereinafter "SOFRIS" or "Defendant"), testified in Kansas on behalf of BLECHMAN as a character witness. This testimony was an overt act in the conspiracy between BLECHMAN and SOFRIS in an effort to exonerate BLECHMAN of illegal conduct. During SOFRIS' testimony he identified himself as the employer and legal representative of BLECHMAN. SOFRIS also testified that he and BLECHMAN trained bankruptcy petition preparers on what needed to be disclosed on the petitions. On January 16, 2009, the jury found BLECHMAN guilty on 13 felony counts.

(Dk. 62, pp. 4-5 (footnote omitted)).

Paragraph 13 describes Blechman's sentence and Judge

Robinson's order that placed Blechman on bond pending appeal:

On January 21, 2010, BLECHMAN was also sentenced to imprisonment for 18 months on each of Counts 1 through 7, to be served concurrently with each other; 2 years supervised release as to Count 1, and 3 years of supervised release as to Counts 2-7, to be served concurrently with each other; and imposed a $700 total special assessment. At the time of sentencing the defendant was placed on bond pending appeal pursuant to an order issued by Judge Robinson. In that order Judge Robinson simply noted that:
"The terms of the previous Order Setting Conditions of Release and the unsecured Appearance Bond in the amount of $25,000 (Docs. 42 and 43) shall remain in force and effect pending appeal."
Doc. 195, Case number 08040008-JAR. (sic)

(Dk. 62, pp. 5-6).

Finally, the superseding indictment adds two paragraphs that

allege certain events as having some connection to Kansas and that also

label the same events as "overt acts":

15) Sometime between March through May, 2010, SOFRIS called BLECHMAN'S criminal defense lawyer, Christopher Joseph, in Topeka, Kansas, to inquire if the case was on appeal or otherwise request a status report. This was an overt act in the continuing conspiracy between SOFRIS and BLECHMAN to establish a defense and/or justification for concealing BLECHMAN's felony conviction and the Final Order of forfeiture judgment entered by Judge Robinson in the amount of $1,063,176.30, in a Bankruptcy Petition BLECHMAN and SOFRIS were preparing to file to obtain an automatic stay to substitute for the stay that was lifted in the bankruptcy case of Maxine Blechman. On SOFRIS' website he advises potential clients:
"Chapter 11 cases are similar to Chapter 13's, but are much more flexible. A Chapter 11 proceeding, is a much-expanded version of a Chapter 13 designed primarily for large businesses,

5

partnerships, and corporations, though individuals can file a Chapter 11 . . . The procedures are complex, and involve the selling of a plan to creditors who ultimately will vote on whether to accept the plan."

BLECHMAN and SOFRIS were well aware that they could not sell a plan to BLECHMAN's creditors knowing he was facing 18 months in federal prison and a forfeiture judgment in the amount of $1,063,176.30 . . . .

19)  September 23, 2010, SOFRIS committed an overt act in furtherance of the continuing conspiracy involving SOFRIS and BLECHMAN, by calling into Kansas and leaving the following voice mail with an Assistant United States Attorney in furtherance of the conspiracy to attempt to provide a defense and/or justification for concealing the felony convictions of BLECHMAN and forfeiture judgment entered by Judge Robinson in the amount of $1,063,176.30 on January 4, 2010:

"basically when I spoke to Chris Joseph and Robert Blechman they said that the case was appealed and therefore it wasn't a final judgment.  I can't . . . um, I've looked at the law and is split in different circuits between your's and ours and I just, you know have, don't have any fixed cite, you know, but that's where it is."

(Dk. 62, pp. 6-7, 9).

## BLECHMAN'S MOTION TO DISMISS COUNT ONE FOR LACK OF VENUE (Dk. 78) AND SOFRIS'S MOTION TO JOIN (Dk. 83).

After incorporating the factual allegations in ¶¶ 1-20, count one

of the superseding indictment charges that:

Beginning sometime in approximately 2002, the precise date being unknown to the grand jury, and continuing at least through October 10, 2010, upon the return of the initial indictment in this case, the defendants herein,

ROBERT ANDREW BLECHMAN
&
MICHAEL N. SOFRIS

combined, conspired, confederated and agreed to commit offenses

against the United States of America, in the District of Kansas and elsewhere, to wit: they knowingly, wilfully and unlawfully disobeyed and resisted a lawful writ, process order, rule, decree and command, i.e., a criminal contempt in violation of Title 18 United States Code, Section 401(3), with reference to Title 18 United States Code, Section 3148(c), by committing the crime of knowingly and fraudulently making a material false declaration, certification, verification and statement under penalty of perjury in relation to a bankruptcy case, that is the Statement of Financial Affairs and Schedule F, in Blechman's Chapter 11 Bankruptcy Petition filed on June 15, 2010 in the Central District of California, a violation of Title 18 United States Code, Section 152.

(Dk. 62, pp. 10-11). On its face, count one charges the defendants with conspiring to commit the offense of criminal contempt in violation of 18 U.S.C. § 401(3) by making materially false declarations in a statement and schedule in relation to Blechman's bankruptcy petition filed on June 15, 2010, in violation of the bankruptcy fraud statute, 18 U.S.C. § 152.

To be candid, this superseding indictment is somewhat a mystery to the court, and the government seems content with keeping others in the dark. Not only do the particular charges bear no resemblance to any that have ever come before this court to the best of its recollection, but count one, in particular, is so fashioned and alleged as to leave one wondering what is actually being charged as the conspiratorial agreement and its scope. In the opening paragraph [¶ 4] of allegations under the title of "THE CONSPIRACY," the government alleges "the object of the conspiracy that starting in approximately 2002," the defendants "commenced using the bankruptcy system to serially file petitions to access the automatic stay

provisions of the United States Bankruptcy Code, and commit bankruptcy fraud, as a litigation tactic to prevent foreclosure on BLECHMAN's personal residence." (Dk. 62). If this was the conspiracy's object starting in 2002, presumably then the government must believe it has charged a conspiratorial agreement to have existed at that time.[2] This is not, however,

---

[2]The court certainly appreciates that there can be a charge of a single conspiracy with an object to commit different crimes on different occasions. *United States v. Kalish*, 690 F.2d 1144, 1151 (5th Cir. 1982), *cert. denied*, 459 U.S. 1108 (1983); *see United States v. Schlapman*, 1992 WL 151808, at *2 (10th Cir. 1992). Indeed, "[a] single conspiracy, . . ., can include a wide range of criminal objectives." *United States v. Rigas*, 584 F.3d 594, 607 (3rd Cir. 2009) (citing *Braverman v. United States*, 317 U.S. 49, 53 (1942)), *rehearing granted en banc*, 605 F.3d 194 (3rd Cir. 2010). For that matter, the court recognizes that the government can bring a single § 371 conspiracy charge alleging "alternative means to commit the offense." *United States v. Hauck*, 980 F.2d 611, 615 (10th Cir. 1992). The court is also guided by the following: "'When a single agreement to commit one or more substantive crimes is evidenced by an overt act as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects.'" *United States v. Rabhan*, 628 F.3d 200, 204 (5th Cir. 2010) (quoting *Braverman*, 317 U.S. at 53). The court also appreciates that "[t]he clandestine nature of conspiracy makes it difficult for a reviewing court to discern the scope of an alleged conspiratorial agreement" and that "the government controls the particularity of an indictment." *Rabhan*, 628 F.3d at 204.

The government offers the court no rationale or explanation for how to read the sweeping conspiracy allegations of the introductory paragraphs into the narrowly worded conspiracy actually charged. "[W]hat § 371 criminalizes is the unlawful agreement and not the substantive offenses which may be the object of the conspiracy. *See Iannelli v. United States*, 420 U.S. 770, 777 (1975) (noting that the 'essence' of a conspiracy 'is an agreement to commit an unlawful act')." *United States v. Rigas*, 605 F.3d 194, 209 (3rd Cir. 2010). The plain operative language in count one charges the defendants with having "combined, conspired, confederated and agreed to commit . . . criminal contempt by committing the crime of . . . making a material false declaration, . . . in relation to a bankruptcy case, . . . filed on

what count one charges.  It does not charge an umbrella conspiratorial agreement to file serial bankruptcy petitions, to commit bankruptcy fraud, and to commit contempt, all in an effort to prevent foreclosure on Blechman's residence.  Instead, count one charges a single conspiracy with the object being to commit criminal contempt.  Even though the defendants have challenged this disconnect in the superseding indictment, (Dk. 78, p. 3), the government does not respond other than to quote ¶ 4 of the superseding indictment as offering "the object" of the conspiracy.  This purported "object" does not appear in or comport with the charging language in count one.  To say the least, the government's approach in pleading count one and in defending this charge is confusingly ambiguous and compels this court to read count one based on its plain charging language.[3]

_____

June 15, 2010 in the Central District of California."  (Dk. 62, pp. 10-11). The specific charging language in count one simply does not permit reading it as alleging a single conspiracy with an object to commit different crimes on different occasions.  The manifest terms of count one precisely charge a conspiracy to commit contempt by the means of a particular crime of bankruptcy fraud that, in turn, is linked to certain filings made on a particular date.  What the government alleges as the object of the conspiracy in ¶ 4 does not match the object of the conspiracy as it is otherwise and specifically charged.  Consequently, it is a factual and legal impossibility for the defendants, beginning in 2002, to have agreed to commit contempt, that is, to violate Judge Robinson's order of January 2010.

[3]"'A part of the indictment unnecessary to and independent of the allegations of the offense [to be] proved may normally be treated as a useless averment that may be ignored.'"  *United States v. Redcorn*, 528 F.3d

"The conspiracy to commit an offense against the United States clause of section 371 requires reference in the indictment to other criminal statutes that define the object of the conspiracy." *United States v. Harmas*, 974 F.2d 1262, 1266 (11th Cir. 1992); *see also United States v. DHS, Inc.*, 2010 WL 1994845 at *1 (S.D. Ala. 2010). Thus, count one charges the offense against the United States to be criminal contempt, a violation of 18 U.S.C. § 401(3), by committing bankruptcy fraud in making a false declaration in matters filed June 15, 2010, in violation of 18 U.S.C. § 152. What the government chooses to allege as the "object of the conspiracy" at ¶ 4 of the superseding indictment--"using the bankruptcy system to serially file petitions to access the automatic stay provisions . . ., and commit bankruptcy fraud, as a litigation tactic to prevent foreclosure on BLECHMAN's personal residence" is not the object of the conspiracy thereafter charged in count one. The court agrees with the defendants that what the government calls the "object" may be a motive for the defendants filing the bankruptcy

727, 735 (10th Cir. 2008) (quoting *United States v. Nickl*, 427 F.3d 1286, 1301 (10th Cir. 2005) (internal quotation marks and citations omitted)). While the introductory allegations are expressly incorporated here in count one, these allegations address matters superfluous to the elements of the particular conspiracy charged by the operative terms of count one. Reading the introductory allegations as the government's evidence of the defendants' motive for filing the bankruptcy petition in the first instance fulfills the court's duty to read the indictment "as a whole" and to interpret it "in a common-sense manner." *United States v. Kilpatrick*, 821 F.2d 1456, 1462 (10th Cir. 1987), *cert. granted in part*, 484 U.S. 1003 (1988), *and judgment aff'd*, 487 U.S. 250 (1988).

petition, but the bankruptcy fraud charged in count one is the false declarations appearing in the bankruptcy filings on June 15, 2010. The agreement to commit contempt through false filings in bankruptcy court is the charged scope and object of the conspiracy. It is not the government's sweeping allegations of some far-ranging agreement to file repeated bankruptcy petitions in California, though they may evidence a motive for filing the bankruptcy petition in 2010. The superseding indictment fails to charge a conspiracy in count one that could have this as an object.

At the outset, the court wants to lay out the unique procedural background on this venue issue. The court's prior order addressed this issue over the span of 17 pages. (Dk. 59, pp. 4-22). The court wants it to be clear on how it will be using its prior order in making the present ruling. The prior order discussed the law governing the procedure and the standards governing a pretrial challenge to venue. In their current filings, no party directly challenges or disputes that order's discussion of the law or, for that matter, the order's application of the law. Consequently, the court will not revisit or restate those legal propositions in this order, but it will incorporate the same by reference. Indeed, without a specific challenge to the court's prior ruling through a new argument, additional legal authority, or new factual allegations, the court will regard its prior order as the law of the case and will not reconsider the same.

As stated above, the court's prior order accepted the government's proffered reading of the original indictment "that count one of the indictment 'charges that the defendants have conspired to violate the contempt statute by committing the crime of bankruptcy fraud in violation of a court order entered in Kansas.'" (Dk. 59, p. 11, citing the government's memorandum, (Dk. 55, p. 5)). There is no question now that the specific charging language of count one in the superseding indictment alleges this to be the narrow conspiracy the government is charging and, therefore, intending to prove at trial. The court, therefore, may properly consider its prior order to have decided the venue issue for the same conspiracy that is now charged in count one of the superseding indictment.

The superseding indictment does not allege any additional facts that would tend to show the charged conspiratorial agreement to have been formed in Kansas. Thus, for venue to lie in this district, "an overt act in furtherance of the conspiracy [must have] . . . been committed by any of the conspirators" here. *United States v. Foy*, ---F.3d--, 2011 WL 1957680, at *7 (10th Cir. 2011) (quoting *United States v. Rinke*, 778 F.2d 581, 584 (10th Cir. 1985). As for what overt acts, if any, supported venue in Kansas, the court's prior order did not sustain the defendants' motion simply because the original indictment failed to allege one or more of the events that the

government argued to be overt acts.[4]  Instead, the court's order discussed the government's position that overt acts supporting its claim for venue in Kansas included the character witness testimony of Sofris in Blechman's criminal trial in Kansas (Dk. 59, pp. 12-15)  and the voice mail message that Sofris left on the telephone of an assistant United States Attorney in Kansas, (Dk. 59, pp. 15-20).  The prior order addressed at length the legal and factual deficiencies with the government proving either event to be an overt act in furtherance of the charged conspiracy.  The rulings in the prior order are clearly based on more than the government's failure to allege these two events as overt acts:

> The government summarily argues that any exception to the general rule against dismissing an indictment based on the sufficiency of the evidence is inappropriate here.  The government insists "the operative facts are disputed" and it "objects to defendants' rendition of the facts and allegations of the indictment."  (Dk. 55, p. 7).  As set forth above, the court analyzed the issue of venue accepting the terms charged in the indictment and relying on the facts and documents used before the grand jury, neither of which the government has reasonably disputed.  The court believes this case to be one of those

---

[4]In its consolidated response filed May 23, 2011, (Dk. 89), the government shows it has chosen to read narrowly the court's prior order:
> We were persuaded that the Court was giving direction to the government about perceived deficiencies in the original indictment, and was not ruling as a matter of law on whether overt acts were in furtherance of the conspiracy, because whether overt acts were to further and effect the object of the conspiracy and consummate the conspiracy were jury questions.  Miller v. U.S., 24 F.2d 353 (2nd Cir. 1928).  Whether an alleged overt act is such is question of fact for jury.  U.S. v. Olmstead, D.C. Wash. 1925, 5 F.2d 712 (D.C. Cir. 1925).
(Dk. 89, p. 5 n.2).

rare instances when the charged conspiracy and the undisputed operative facts establish as a matter of law that the government is incapable of proving this district to be a proper venue for count one. Thus, the court grants the defendant's motion to dismiss count one for the government is incapable of proving that the crime occurred in the District of Kansas.

(Dk. 59, pp. 20-21). To read the court's prior order as addressing only the indictment's failure to allege certain overt acts is untenable. [5]

The government's superseding indictment alleges as overt acts the bankruptcy petition in 2003, the trust creation in 2003, the bankruptcy petitions in 2007, 2008, and 2010. As for overt acts having some connection to Kansas, the superseding indictment alleges Sofris's testimony in Blechman's trial as "an overt act in the conspiracy" because it was "an

---

[5]In a footnote, the government explained that its reading of the order was due to its understanding that the jury decides whether overt acts are in furtherance of a conspiracy. As authority for its understanding, the government cites in part, *Miller v. United States*, 24 F.2d 353 (2nd Cir.), *cert. denied*, 276 U.S. 638 (1928). A close reading of *Miller* shows the court considered whether the alleged acts could be or could not be overt acts based on the conspiracy charged in the indictment. Finding that all alleged acts were "to effect the object of the conspiracy and consummate the conspiracy," the court concluded that "[w]hether these acts did so or not were jury questions." 24 F.2d at 361. The court's approach in the instant case is consistent with *Miller*, for the court is only concerned with whether the alleged acts could be overt acts in furtherance of the conspiracy as charged. *See, e.g., United States v. Thompson*, 125 F. Supp. 2d 1297, 1303 (D. Kan. 2000) ("Even if the meager 'until 1998' language was sufficient to allege an overt act within the statute of limitations period, the court finds the acts relied upon by the government were not overt acts in furtherance of the conspiracy."), *aff'd*, 287 F.3d 1244 (10th Cir. 2002). "The court has the responsibility for determining whether, as a matter of law, the events alleged to have occurred in a particular place could be sufficient to establish that the crime was committed at least in part in that district." 4 Wayne R. LaFave, et al., *Criminal Procedure* § 16.1(g) (3d ed. 2010)

effort to exonerate Blechman of illegal conduct," (Dk. 62, p. 4), Sofris calling Blechman's criminal defense lawyer in Kansas as an overt act "to establish a defense and/or justification for concealing BLECHMAN's felony conviction" in the bankruptcy filings, (Dk. 62, p. 6-7), and Sofris leaving a voice mail message on the telephone of an assistant United States attorney as an overt act "to provide a defense and/or justification for concealing the felony convictions . . . and forfeiture judgment," (k. 62, p. 9).

Looking at the actual charging language in count one, as the court did above, the defendants contend the object of the charged conspiracy was to violate the Blechman's conditions of release by filing a statement and schedule in the bankruptcy case that contained false declarations on June 15, 2010. When these filings were made in bankruptcy court, the order that effectively placed the defendant on bond pending appeal and that imposed the conditions of his release was Judge Robinson's order of January 14, 2010. Thus, the defendants reasonably construe count one as charging a conspiracy to violate Judge Robinson's January 14th order by committing bankruptcy fraud in California through the filing of false documents on June 15, 2010. The defendants recognize the government's allegations attempt to define a broader conspiracy, and they offer this in response:

> The reason for inclusion of this inconsistent language in the indictment is fairly transparent. The government wants to try Mr.

15

> Blechman in Kansas for abusing the automatic stay provision of the
> bankruptcy code in California through bankruptcy filings in California
> beginning in 2002. No matter how much the government wants to
> prosecute the defendants for what they see as unlawful conduct
> related to the California bankruptcy filings starting in 2002, it cannot
> do so in Kansas. That prosecution would have to be brought in
> California.

(Dk. 78, p. 3). It would appear the defendants are on to something,

considering that the court already has observed the superseding indictment's

background allegations allege a sweeping and far-ranging conspiracy of

bankruptcy fraud while the actual charging language of count one alleges a

much narrower conspiracy to commit contempt.

The defendants challenge that the three events with connections

to Kansas are not overt acts to the conspiracy as charged. Regarding Sofris's

testimony in Blechman's trial, the defendants note the court's prior ruling

that this is not an overt act of the charged conspiracy to commit contempt,

since it occurred well before Judge Robinson ever considered entering the

order that is the object of the conspiracy to violate. Regarding Sofris's voice

mail message, the defendants note the court's prior ruling "that the charged

object of the conspiracy had been frustrated and the conspiracy abandoned"

before the voice mail message was made and that the message was "no

more than an act of covering up after the crime, that is, after the central

objective of the charged conspiracy had been frustrated and abandoned."

(Dk. 59, p. 20). Finally, regarding the alleged phone call from Sofris to

Blechman's defense counsel in Kansas[6] "to establish a defense and/or justification for concealing BLECHMAN's felony conviction," the defendants contend that the charged objective of the bankruptcy fraud was not furthered by developing a defense to a fraud allegation, that this so-called defense is not part of any alleged conspiracy to conceal the fraud, and that the conspiracy as charged was completed with the filing of the papers. As for what this phone call accomplished, the defendants also argue that the phone call obtained the same information available from the public record of the criminal case and that the objective of the charged conspiracy was not furthered by obtaining public information on the status of a case from defense counsel.

The government's written response to this motion quotes the allegations in the superseding indictment on these three acts connected to Kansas. Instead of addressing any of the defendants' arguments or the court's prior rulings, the government offers only this after quoting the superseding indictment:

---

[6]The defendants warn the government about relying on this allegation at trial:

"This allegation was not in the original indictment. If it is the sole basis for allowing Count One to go forward to trial, the government will find itself in a difficult position at trial. If an untrue allegation in the superseding indictment is the only basis for getting to trial, the government will necessarily lose a motion for judgment of acquittal at trial."

(Dk. 78, p. 7).

These three acts are now clearly delineated as overt acts of the conspiracy, the object of which was to use: "the bankruptcy system to serially file petitions to access the automatic stay provisions of the United States Bankruptcy Code, and commit bankruptcy fraud, as a litigation tactic to prevent foreclosure on BLECHMAN's personal residence at 11901 Lucile Street, Culver City, California." Doc. 62

On its face the indictment now establishes that Kansas is a proper venue for trial of the conspiracy.

(Dk. 89, pp. 5-6). Ignoring the substance of the defendants' arguments and the merits of the court's prior ruling, the government stands on the bare allegations of the superseding indictment as sufficient. The government essentially invites the court to craft the arguments and rationale for defending the superseding indictment against the defendants' attacks based on the new background allegations of a conspiracy different in scope, objective and purpose than what is charged in count one. The court will not assume that responsibility.

The plain terms of the indictment do not require the court to reconsider its rulings that Sofris's testimony and Sofris's voice mail message are not overt acts. Because the government offers no new arguments or authorities to oppose the court's prior analysis and rulings, the court will not revisit or reconsider them. Neither event as alleged could be an overt act in furtherance of the conspiracy as charged.[7] In light of the legal propositions

---

[7]The overt acts sufficient to establish venue "must occur subsequent to the formation of the conspiracy agreement and prior to or in completion of the conspiratorial objective." 4 *Criminal Procedure* § 16.2(g) (footnotes omitted).

stated and analyzed in the court's prior order, the government has failed to offer any viable rationale for how either event furthered the conspiracy as actually charged in count one.

This leaves the allegation of Sofris's phone call to Blechman's defense counsel in Kansas.  For venue purposes, an overt act is sufficient if it furthers the accomplishment of the objective, and "[n]o distinctions are drawn based on the importance of the act to the accomplishment of the objective or on the legality of the act."  4 *Criminal Procedure* § 16.2(g). "[T]elephone calls can constitute overt acts in furtherance of a conspiracy." *United States v. Rommy*, 506 F.3d 108, 120 (2nd Cir. 2007), *cert. denied*, 552 U.S. 1260 (2008); *see, e.g. United States v. Rinke*, 778 F.2d 581, 585 (10th Cir. 1085) (drug trafficking conversations over the telephone with a co-conspirator in Kansas are sufficient for venue).  A telephone call that furthers the conspiracy placed by a conspirator outside the venue to a non-conspirator within the venue "'is sufficient to establish venue . . . with regard to any member of the conspiracy 'at least in the absence of unfairness or hardship . . . arising from trial in that district, or artificial creation of venue in that district by the Government.'"  *Id.* (quoting *United States v. Naranjo*, 14 F.3d 145, 146 (2nd Cir.), *cert. denied*, 511 U.S. 1095 (1994)).  Even if the non-conspirator places the call, "[w]hat is determinative of venue-as the district court emphasized to the jury-is whether the conspirator used the

telephone call to further the objectives of the conspiracy." *Rommy*, 506 F.3d at 122. "The overt act must be evaluated with reference to the object of the conspiracy." *United States v. Brown*, 200 F.3d 700, 706 (10th Cir. 1999), *cert. denied*, 528 U.S. 1178 (2000).

Paragraph fifteen of the superseding indictment alleges that "SOFRIS called BLECHMAN's criminal defense lawyer, Christopher Joseph, in Topeka, Kansas, to inquire if the case was on appeal or otherwise request a status report." (Dk. 62). It further alleges this call to be "an overt act in the continuing conspiracy between SOFRIS and BLECHMAN to establish a defense and/or justification for concealing" the conviction and forfeiture judgment from the bankruptcy petition being prepared for filing. *Id*. The government does not respond to any of the defendants' arguments disputing the government's characterization of this alleged telephone call as an overt act in furtherance of the charged conspiracy. The charged object of the conspiracy was to violate Judge Robinson's order by committing the crime of making a false declaration in bankruptcy court. This objective is not furthered by the defendants establishing a defense or justification should their fraud be revealed. Indeed, the successful accomplishment of the stated objective to this charged conspiracy did not necessitate creating a defense should the conspirators ever be caught. The object of the charged conspiracy was accomplished with the filing of the false declaration whether

20

or not the defendants had a defense or justification. The government does not respond to these points made in the defendants' briefs. The court is persuaded by these arguments that the alleged phone call could not have furthered the accomplishment of the charged conspiracy's objective. Because the superseding indictment fails to allege an overt act committed in Kansas in furtherance of the conspiracy charged in count one, the court grants the defendants' motion to dismiss for lack of venue.

**SOFRIS'S MOTION TO DISMISS INDICTMENT (Dk. 81).**

While count two charges criminal contempt tracking the statutory language, Sofris seeks dismissal of this count two arguing it fails to plead two essential elements of criminal contempt. The government asks the court to overrule this motion as moot or waived, because the defendant Sofris did not raise these challenges in his motions filed against count two of the original indictment. The government notes that the superseding indictment did not modify count two and that the court's recent scheduling order of April 19, 2011, provided: "Any new motions made necessary by the filing of the first superseding indictment shall be filed on or before May 9, 2011." (Dk. 73, p. 1). The court's scheduling order was intended primarily to discourage the parties from refiling and arguing anew the same matters already presented and decided in the first round of motions. At the hearing, counsel for Sofris conceded his arguments here could have been made with

regard to count two of the original indictment, but he asked the court to address his pretrial motion as raising issues that need only be presented before trial. *See* Fed. R. Crim. P. 12(b)(3). In the exercise of its discretion, the court will consider Sofris's motion to dismiss the indictment. At the hearing, the court granted the defendant Blechman's request to join this motion to dismiss.

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged...." Fed. R. Crim. P. 7(c)(1). The Supreme Court has explained that an indictment must "first, contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend, and, second, enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Put another way, an indictment is "'sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense.'" *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)). The Supreme Court offers the following on the sufficiency of an indictment that tracks the statute:

It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully,

directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.' *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882). 'Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.' *United States v. Hess*, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1888).

*Hamling v. United States*, 418 U.S. at 117-118.

The defendants argue count two fails to allege that the order violated was reasonably specific and that the defendants had actual knowledge of the court order. As authority for these elements of criminal contempt, they rely on the following from a Tenth Circuit decision:

Although this circuit has not dispositively addressed this issue, several other circuits have recognized a notice requirement under § 401(3). Almost all of those circuits have agreed that one may be held in contempt only if the court's order is sufficiently specific so as to put the alleged contemnor on notice. *See, e.g., Hazen v. Reagen*, 16 F.3d 921, 924 (8th Cir. 1994) ("Before a party can be held in contempt for violating a court order, he must have actual knowledge of the order and the order must be 'sufficiently specific to be enforceable.'" (quoting *Finney v. Arkansas Bd. of Correction*, 505 F.2d 194, 213 (8th Cir. 1974))); *Cooper v. Texaco, Inc.*, 961 F.2d 71, 72 n. 3 (5th Cir. 1992) ("There are three elements to contempt under 18 U.S.C. § 401(3): (1) a reasonably specific order, (2) violation of the order, and (3) the willful intent to violate the order." (citing *United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir.1989))); *United States v. Powers*, 629 F.2d 619, 627 (9th Cir.1980) ("Criminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and the contemnor willfully disobeys the order."); *In re Rubin*, 378 F.2d 104, 108 (3d Cir.1967) ("[T]he alleged contemnor [must have] had knowledge of the order which he is said to have violated[,]" and the order "must be specific and definite." (citing *Wilson v. North Carolina*, 169 U.S. 586, 600, 18 S.Ct. 435, 440-41, 42 L.Ed. 865 (1898)); *Terminal R.R. Ass'n v. United*

> *States*, 266 U.S. 17, 29, 45 S.Ct. 5, 8, 69 L.Ed. 150 (1924)); cf.
> *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir.1991) (noting that
> a court order must be "clear and unambiguous," and that any
> ambiguities must be construed in a light favorable to those charged
> with contempt).

*United States v. Voss*, 82 F.3d 1521, 1525 (10th Cir.), *cert. denied*, 519 U.S.

889 (1996).  The government seeks to distinguish *Voss* as involving disputed

issues over whether the defendants as members and directors of an

organization were put on notice of their legal obligation to comply with a

court's order enforcing subpoenas.

Contrary to the government's argument, the elements appearing

in *Voss* are not a simple matter of the court fashioning a jury instruction to

match a particular set of facts and defenses.  The above quotation and the

internal case citations refute the government's position.  Even so, the court

believes the superseding indictment here sufficiently alleges that the order

releasing Blechman was conditioned on Blechman's agreement that he

"would not 'commit any violation of federal, state or local law' while on

release."  (Dk. 62, ¶ 8).  Such an allegation fairly satisfies the notice

element laid out in *Voss*.  The grand jury necessarily found the order was

reasonably specific in that it particularly addressed Blechman's release and it

included Blechman's agreement to this condition with which he is charged to

have violated.  The superseding indictment further alleges that the

magistrate judge entered this order and condition during Blechman's first

appearance before the magistrate judge and that Blechman signed the order "acknowledging a violation of the conditions of release could subject him to a revocation release." (Dk. 62, ¶¶ 8 and 9). These allegations show the grand jury necessarily found that Blechman had knowledge of this order and condition applying to him. The defendant's motion to dismiss on these grounds is denied.

Finally, the defendant Sofris contends count two is defective in alleging the court order violated on June 15, 2010, was the magistrate judge's order of July 1, 2008, that had expired as a matter of law. The defendant points to ¶ 13 of the superseding indictment that alleges in part: "At the time of sentencing the defendant was placed on bond pending appeal pursuant to an order issued by Judge Robinson." The defendant concludes:

> Strangely, rather than allege a violation of this order, Count 2 jumps back to Judge Sebelius's pretrial release order. In so doing, the superseding indictment alleges the violation of an order that was no longer in effect at the time of the alleged violation. Thus, Count 2 "fails . . . to state an offense" and must be dismissed. Fed. R. Crim. P. 12(b)(3)(B).

(Dk. 82, p. 14). The defendant highlights the different statutory provisions that govern a defendant's release pre-conviction and those that govern post-conviction release. He notes how this distinction is preserved in the criminal rules. The defendant also points out that the magistrate judge's authority to issue orders of release and detention is limited to pretrial release by statute:

> (a) Each United States magistrate judge serving under this chapter

25

shall have within the district . . ., and elsewhere as authorized by law--
. . . .
        (2) the power to . . . issue orders pursuant to section to § 3142
of title 18 concerning release or detention of persons pending trial ....

28 U.S.C. § 636(a)(2).

        The government limits its response to the following:

        The defendant's motion to dismiss the indictment must be
        overruled and denied. And the argument that this Order had "expired"
        is specious. On June 14, 2010, (sic) Judge Robinson clearly stated
        that "The terms of the previous Order Setting Conditions of Release
        and the unsecured Appearance Bond in the amount of $25,000 (Docs.
        42 and 43) shall remain in force and effect pending appeal." Doc. 195
        in case number 08-30008 (sic). This did not serve to expire, but
        extended Judge Sebelius's order which remains in full force and effect
        today.

(Dk. 89, p. 20). Earlier in its brief, the government said that the defendants

had "manufactured" this characterization of Judge Sebelius's order expiring

and that "Judge Robinson did not 'incorporate' Judge Sebelius's language to

create new conditions of release, but specifically, ordered that Judge

Sebelius's conditions would remain in full force and effect." *Id.* at 16. The

government does not respond to any of the statutory provisions cited and

argued in the defendants' memorandum concerning a magistrate judge's

authority to impose an order of release or detention pending appeal.

        Not cited by the defendants in their memorandum is 18 U.S.C. §

3141, the provision governing "Release and detention authority generally,"

and this provision limits the judicial officers who may order release pending

sentence or appeal:

26

> **(a) Pending trial.**--A judicial officer authorized to order the arrest of a person under section 3041 of this title before whom an arrested person is brought shall order that such person be released or detained, pending judicial proceedings, under this chapter.
>
> **(b) Pending Sentence or appeal.**--A judicial officer of a court of original jurisdiction over an offense or a judicial officer of a Federal appellate court, shall order that, pending imposition or execution of sentence, or pending appeal of conviction or sentence, a person be released or detained under this chapter.

18 U.S.C. § 3141; *United States v. Valera-Elizondo*, 761 F.2d 1020, 1023 (5th Cir. 1985)("Under 18 U.S.C. § 3141(b), release and detention authority pending sentence and appeal is vested in a judge of a court having original jurisdiction over the offense, or a judge of a federal appellate court. See S.Rep. No. 225, 98th Cong., 1st Sess. 4 (1983), reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3186."); *see United States v. Price*, 618 F. Supp. 2d 473, 479 (W.D.N.C. 2008) ("Under Subsection (b), if the case is pending sentence or appeal, "judicial officer" is qualified and must be found within "a court of original jurisdiction over an offense" or "a Federal appellate court." "FN14. This is consistent with 28 U.S.C. § 636, which expressly addresses the magistrate judge's powers with respect to 18 U.S.C. § 3142.  Pursuant to Section 636(a)(2), the magistrate judge has the power to 'issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial . . . .' 28 U.S.C. § 636(a)(2).").  Magistrate Judge Sebelius was not a "judicial officer" under § 3141(b) with the authority to issue an order of release or detention following Blechman's sentencing here.

It necessarily follows that the magistrate judge's order of pretrial release on conditions could not be the order having power or effect over the defendant's release on or about June 15, 2010, as charged in count two. Because that order was no longer in effect, its violation as alleged in count two cannot sustain a charge of contempt.

The government chooses to read Judge Robinson's order granting Blechman's release pending appeal as having "simply extended what had been ordered by Judge Sebelius" such that the magistrate judge's order "did not expire but [was] . . . extended by order of Judge Robinson." (Dk. 89, p. 9). The court finds the government's reading untenable in light of Judge Robinson's actual wording and the statutory scheme for release and detention pending judicial proceedings already discussed above. In its prior order, the court already offered its understanding of this matter:

> Count two charges that the contempt offense was committed on or about June 15, 2010. At that time, the defendant was on bond pending appeal pursuant to an order issued by Judge Robinson on January 14, 2010. (D. Ct. No. 08-40008, Dk. 195). Judge Robinson entered that order of release pending appeal pursuant to 18 U.S.C. § 3143(b). Id. The order further provided that the terms of the prior order setting conditions of release would remain in force and effect pending appeal. Id. Thus, the contumacious actions are charged as having occurred when the defendant was on release under § 3143(b) but pursuant to the same conditions initially imposed by the court when the defendant was on release under § 3142.

(Dk. 59, p. 26). Instead of extending the magistrate judge's order of pretrial release, Judge Robinson entered a separate order deciding that

28

Blechman should be released based on the unique standards governing release pending appeal as set forth in § 3143(b) and that sufficient conditions for such release would be the same as those that had been imposed by the magistrate judge to govern the defendant's pretrial release.

Judge Robinson's order is not an instance of a judge eschewing his or her authority to rule and simply abiding by the authority of an order already in place and controlling of the circumstances. By statute, the Magistrate Judge lacked the direct authority to release Blechman pending appeal. Consequently, Judge Robinson entered her own order granting Blechman's request for release pending appeal and setting the conditions on which Blechman would be released. Judge Robinson chose those conditions already imposed during Blechman's pretrial release and directed that they "remain in force and effect pending appeal." Plainly, Judge Robinson exercised her authority under §§ 3141(b) and 3143(b) in January of 2010. On June 15, 2010, when the defendants are alleged to have filed material false declarations in the bankruptcy court in California, Blechman was no longer subject to the Magistrate Judge's order setting the conditions for his pretrial release, and his actions could not have violated that order. Thus, the superseding indictment on its face fails to charge that the defendants disobeyed or resisted an effective court order on June 15, 2010. The government offers no alternative course should the court sustain the

defendants' arguments on this point. Because it does not charge the defendants with violating an effective court order, count two fails to state an offense and must be dismissed.

As a result of the above rulings, there are no counts remaining in the superseding indictment on which to consider and address the defendants' remaining motions. For this reason, the court denies the balance of the defendants' motions as moot in light of these rulings.

IT IS THEREFORE ORDERED that the defendant Robert Andrew Blechman's motion to dismiss count one for lack of venue (Dk. 78) is granted, and his motion to strike language in indictment as surplusage (Dk. 77) and his motion to renew (Dk. 79) are denied as moot;

IT IS FURTHER ORDERED that the defendant Michael N. Sofris's motion to dismiss indictment (Dk. 81) is granted as to count two for the reasons stated above, his motion to join defendant Blechman's motion to dismiss count one for lack of venue (Dk. 83) is granted, and his motion to strike prejudicial surplusage from the indictment (Dk. 80) and his motion to join the defendant Blechman's motion to renew prior motions (Dk. 84) are denied as moot.

Dated this 22nd day of June, 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge